The Chancellor.
In the year 1852, the complainant entered into several agreements in writing, with different individuals and with the Atlantic Land Company Association, for the purchase of several tracts of land in the county of Atlantic.
By the terms of the agreement, the several tracts were to be conveyed to him when the consideration money was paid. Under the agreements, he entered into possession. He then formed a partnership in business with John C. Michenor, one of the defendants. By the terms of the partnership, they were both to be equally interested in the several tracts of land embraced in the agreements. Michenor then entered into possession with the complainant. They made valuable improvements; and, on one of the tracts, erected a hotel, at a cost of upwards of fifty thousand dollars. On the 17th October, 1854, they made a settlement between them, and dissolved partnership. It was found, upon the settlement, that the complainant had made advances, most of which had been expended in the erection of the hotel and other improvements, to an amount exceeding thirteen thousand dollars. .It was agreed, in the terms of the dissolution, that the complainant should convey to Michenor all his interest in the several tracts of land mentioned in the agreements; that Michenor should pay whatever remained due of the consideration money ; that he should pay all the outstanding debts of the partnership, and should execute a mortgage upon the said land to secure the complainant that judgment of |18,242.62, in five equal annual payments. The deed was executed, and delivered by the complainant to Michenor, and the latter executed and delivered the mortgage, as agreed upon. Michenor never procured any title to the land to be made to him; but witb his consent, in the year 1854, conveyances were made to Charles Harlan, another of the defendants, who undertook to pay what remained due of the consideration money and some mechanic lienB which were upon the hotel. It does not ap *541 pear that there was any agreement in writing between the complainant and Harlan, and there is no evidence as to the particulars of the agreement upon which he received the conveyances.
The bill charges, that although the deeds to Harlan are absolute on their face, it was understood that he should take the title merely to secure future advances; it alleges, that the arrangement between Michenor and Harlan was fraudulent, and was made for the purpose of defeating the complainant’s mortgage, and that Harlan had notice of the mortgage before he took the conveyances. The main object of the bill is to establish the mortgage as a lien upon the several tracts of land particularly described in it, and conveyed to Harlan, and the priority of the mortgage.
Harlan and Michenor have put in their answers to the bill separately. They both deny that Harlan took the conveyances to secure future advances, but allege that the title is absolute in him, and without any implied reservation in favor of Michenor. Michenor denies that he gave any notice to Harlan of the complainant’s mortgage, and the latter denies that, at the time of the conveyances to him, or at the time he paid the consideration money, he had any knowledge whatever of the mortgage. And he denies the validity of the mortgage as a lien upon the property, even admitting he had notice.
"Was this mortgage a valid mortgage? and did Harlan have notice of it ? If these questions are answered in the affirmative, the complainant is entitled to relief, leaving only one other question to be decided — whether the mortgage is entitled to priority over the advances made by Harlan.
The validity of this mortgage is denied, upon the ground that Michenor, the mortgagor, had not any such title to, or interest in, the land as was capable of being mortgaged. The complainant was the purchaser under agreements with the vendors under hand and seal, that they *542 would convey to him the land, at a future day, upon his paying the consideration money expressed in the agreements. Has the purchaser, under such an agreement, an interest in the land which is the subject of mortgage ? For if the complainant had an interest capable of being mortgaged, Michenor had also, for all the interest which the complainant had he assigned and conveyed to Michenor.
In 2 Story's Eq. J., § 1021, it is said — “ As to kinds of property which may be mortgaged, it may be stated, that in equity, whatever property, personal or real, is capable of an absolute sale may be the subject of a mortgage. This is in conformity to the doctrine of the civil law— Quod emptionem,, venditionem que reeipit, etiam pignorationem recipere potest. Therefore rights in remainder and reversion, possibilities coupled with an interest, rents, franchises, and choses in action, are capable of being mortgaged.”
Everything which is the subject of a contract, or which may be assigned, is capable of being mortgaged. The right or interest which the complainant had in the lands was created by contract; and it was the valuable right, of having a legal conveyance of the land, upon his complying with the terms of the contract. He had acquired an interest in the land, which could not be affected, or conveyed away by the vendor, without a fraud upon the vendor’s rights. And a purchaser, who should have received a conveyance with knowledge of the existing agreement, would have been held, in equity, as the vendor himself was in fact, a mere trustee for the complainant. Equity considers the vendor as a trustee for the vendee of the real estate, and the vendee as a trustee for the vendor of the purchase money. The vendee is so far treated as the owner of the land that it is devisable and descendible as his real* estate, and the money is treated as the personal estate of the vendor, and goes to his personal representatives at his death. 2 Story’s Eq. J., § 112. There cannot; *543 be a doubt that such an interest as the complainant had under his contracts for purchase, and which he assigned to Michenor, is capable of being mortgaged. It is the subject of an equitable lien, or trust, which a court of equity will enforce and protect. Interests in property are protected by courts of equity which are not recognised at law as valid or effectual as subject matters of legal conveyances or assignments. 1 Powell on Mortgages 17, in enumerating the things which are capable of being mortgaged, says, “ everything which may be considered as property, whether, in the technical language of the law, denominated real or personal property, may be the subject of a mortgage. Advowsous, rectories, and tithes may be the subject of a mortgage. Reversions and remainders, being capable of grant from man to man, are mortgagable. Possibilities, also, being assignable, are mortgagable, a mortgage of them being only a conditional assignment.” A tenant at will has not such an estate, or property, in lands as can be mortgaged, but any estate in fee simple, fee tail, for life or years, in any lands, or in any rent or profit out of the same, may be mortgaged. 1 Powell on Mortgages 18.
The case of Parkist v. Alexander, 1 J. C. R. 394, was, in its leading features, very similar to the present case, and its decision necessarily involved the question we are now' considering. Tucker made a parol agreement with Alexander, who acted as agent for Ellis, the owner of the property, for a lease to Tucker, in fee, for a lot of land, subject to the annual rent of three pounds. Parkist, the complainant in the suit, purchased Tucker’s right, and took possession of the premises, and made valuable improvements. lie then sold the premises tp McKnight, and gave him a quit-claim deed ; and, to secure the payment of the purchase money, took his bond and mortgage, which was duly recorded. Alexander procured the lease from Ellis, the owner of the premises, and then McKnight conveyed to Alexander for $700. The answer denied that *544 Alexander had any notice of the mortgage. The Chancellor sustained the mortgage, and decided that the registry of it was notice to a subsequent bona, fide purchaser. It will be observed, that when McKnight mortgaged the premises, he had no other interest in them than the assignment of Parkist’s right, under a verbal agreement for a lease between Tucker and the agent of Ellis, the owner, and the right to which lease Parkist had purchased of Tucker. The interest which the mortgagee had in the land was an interest similar to that which Michenor had when he mortgaged to the complainant. McKnight had a right for a lease in fee, subject to the payment of an annual rent. If an interest like that was capable of being mortgaged, then surely Michenor, who had a right to a conveyance in fee, had such an interest as would support a mortgage. The mere fact of all the consideration money not having been paid, cannot affect the question, whether his interest was such as could be mortgaged. I think that Michenor had an interest capable of being mortgaged, and that it created a valid lien upon the land subject to the rights of the vendor under the agreement.
Did Harlan have notice of the mortgage ? The mortgage was duly recorded. It is insisted that the registry was notice.' It does appear to me, notwithstanding the decision of Parkist v. Alexander, that the registry of such a mortgage ought not to be considered as notice. If it is notice, it is notice to all the world. Now if Leeds, one of the persons with whom the complainant made an agreement to purchase, had sold the premises to a bona fide purchaser without actual notice of this mortgage, would such purchaser have been affected by the registry of such equitable mortgage ? The agreement was not recorded. There was no authority to record it. ,A bona fide purchaser would not be affected by such agreement. If not, could he be affected by- the registry of a mortgage executed by the vendee of such an agreement ? The object of the registry is to give notice to subsequent purchasers. *545 But the registry of a mortgage like this is no protection. The title upon the record was in Leeds, and finding the title in him, a person who went to the record to search for encumbrances upon the premises would have no intimation that it was necessary to search in the name of Michenor. There was nothing upon the record to show that he had any interest in the laud, or to give him any elue whatever to this mortgage; and if he was required to search for such a mortgage, then he w'ould be obliged to search them through every name to be found in the registry books.
But I do not deem it necessary to decide this point. I think it is proved, beyond all dispute, that Harlan had actual notice of this mortgage. In his petition to open the decree pro confesso, which was obtained against him in this cause, and which is under oath, he says that, on or about the 25th of May, 1855, he took a deed from Charles Leeds and wife for the land embraced in their agreement with the complainant; that, on the 19th day of May, 1855, Hacket and wife executed a deed to him for the land embraced in their agreement with the complainant, which was delivered on or about the 25th of May, 1855, and that the Camden and Atlantic Laud Company executed a deed to him on the 27th of April, 1855, for the land mentioned in their agreement with the complainant, but which was not delivered until the first of the month of June, 1855. In his answer, he states that before he had any knowledge or notice whatever of the complainant’s mortgage, he had not only made the agreement with Michenor, and paid the money for the property, but that he had obtained the title deeds for the property before such knowledge.
He further states, that some person, some time in the spring of 1855, brought to him a mortgage purporting to be given by Michenor to the complainant, and said to cover the property, or some part thereof, purchased by him, but whether it did so cover it or not, he cannot positively *546 say, but that prior to that time his agreement with Michenor had been made and consummated, the money paid, and the deeds all been executed, and that the deeds from Hacket. and wife and Leeds and wife had been actually delivered, and that he thinks and believes that the deed from the Camden and Atlantic Land Company had also been delivered. In his petition he states, that the first information or knowledge he ever had that there was any such mortgage or agreement between the complainant and Michenor was some time after the deeds liad been executed and delivered, and the purchase money, in full, paid, and that such information was given to him by Judge Carpenter, the counsel of Michenor, which was some time after the deed from the land company had been made, and was on the day, and at the time, the purchase money was paid, and the deed of the company delivered.
It is possible, with some difficulty, to reconcile the discrepancies between the petition and the answer with a disposition to tell the truth; but the evidence so completely disproves the statements of both, as to render such an attempt altogether unnecessary and unavailing.
James H. Castle says, that in May, 1855, between the 10th and 15th, the complainant placed the mortgage in his hands to sell for him, and requested him to make application to Harlan ; that on or about the 20th of May, he laid the mortgage before Harlan; that he spent some time with him about the matter; that Harlan examined the papers carefully, and took a memorandum of the pro-, perty, and the dates of the mortgage, &c.; that he examined the map, and when they separated said, he would see witness again upon the subject; that on the next day he called and asked to look at the papers, which were shown him, when he remarked, that the mortgage was not worth the paper on which it was written. Witness says, in consequence of Harlan’s remark, he went to the complainant, and told him he had better take legal eoun *547 sel, and recommended Judge Carpenter. Judge Carpenter testifies, refreshing his memory from an entry in his docket, that the complainant retained him on the 25th of May, and then placed the mortgage in his hands. There was no one of the deeds delivered, and no money paid before the 25th of May. Harlan so states in his answer and his petition. So that it is proved, that before be received a deed, or paid any money, he had full notice of the mortgage.
Isaac Loyd testifies that he was the secretary and treasurer of the Camden and Atlantic Land Company; that the deed from that company to Harlan was delivered by the witness to Harlan on the 8th of June, 1855, and at that time he received from him the purchase money. The witness further testifies, that Judge Carpenter requested him to give notice to Harlan of the mortgage before its delivery; that he gave him the notice, and that Harlan made no reply, but smiled as though he knew all about it, and as if it was of no consequence.
The evidence establishes the fact, that Harlan had actual notice of the complainant’s mortgage before his purchase.
It appears that, at the time of Harlan’s purchase, there was due and payable to the grantors, for purchase money upon their several agreements, the sum of five thousand two hundred and eighty-one dollars, and that this amount was paid by Harlan. Ho also made other advances to satisfy encumbrances upon the property. Under ordinary circumstances, these payments would have been decreed existing liens upon the property in the hands of Harlan having priority over the complainant’s mortgage. Although Michenor, in his agreement with the complainant, was bound to pay the purchase money, it appears he was unable to do so. It was necessary the money should be paid, or the title of the vendee under the agreement would have been forfeited. The payment of this money, therefore, was necessary in order to complete the title *548 which supports the mortgage. If a third person, under such circumstances, had advanced the money in order to prevent a forfeiture of the vendee’s rights under the agreement, I think it would have been equitable that he should be reimbursed. But Harlan claims no such equity. He does not pretend that he paid the money for the purpose of protecting the mortgage. On the contrary, he is detected in an attempt to deprive the complainant of his security. His object was to defeat the mortgage; and having been thwarted in this unlawful purpose, he has no claim whatever to the interference of this court for his protection. He must stand upon his legal rights.
There was an objection made, that at the time of filing the bill there was no default of payment of anything due upon the mortgage. If such were the fact, the complainant had a right, under the circumstances, to file his bill to protect his lien. That being established, he has now a right to have it enforced for whatever may be due upon it at the time of the decree.
There must be a reference to a master to take an account of what is due upon the mortgage and upon the other encumbrances, which appear, by the pleadings, to be undisputed. In taking the account, Michenor will have an opportunity of showing what credit he is entitled to upon the mortgage, and for that purpose the master can use the depositions already taken, and may take such other testimony as the parties may see proper to offer.